UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CODY BENSON, <br><br> Defendant. | CASE NO. CR21-5222 BHS <br><br> ORDER |

This matter is before the Court on Defendant Cody Benson's Motion to Dismiss, Sever Counts, and Compel Discovery, Dkt. 37, and the Motion to Produce Grand Jury Instructions, Dkt. 49. The Court **RESERVES RULING** on the issues of dismissal or severance of count 4. It additionally **RESERVES RULING** on the issue of whether to compel discovery as described in Dkt. 37. The parties are scheduled to appear before the Court on December 14, 2023, to address the issues of severance of count 4, as well as the original motion to compel discovery in Dkt. 37. In the present order, the Court **DENIES** the motion to dismiss counts 1–3 and **DENIES** the Motion to Produce Grand Jury Instructions, Dkt. 49, for the reasons stated below.

ORDER - 1

## I. FACTUAL BACKGROUND

The charges here arise from Cody Benson's tenure as Executive Director of the Washington Coalition of Crime Victim Advocates (WCCVA), a non-profit organization that offered training and technical assistance to individuals and organizations that provided services to crime victims. It was funded by legislative grants administered by the Washington State Attorney General's Office (AGO). Dkt. 1, ¶ 2. Benson held her position as Executive Director of WCCVA from 2013 until June 2018.

In July 2021, a grand jury indicted Benson on four counts of wire fraud. Dkt. 1. Counts 1–3 allege that, in 2016 and 2017, Benson created and delivered six false invoices totaling approximately $199,000 to the AGO "in order to give the appearance that [she] was actively performing her job." *Id*. ¶¶ 5, 6. The Government alleges that the invoices Benson submitted sought reimbursement "for work that was never performed or for items that were never ordered or received." *Id*. ¶ 6. The Government does not allege that Benson or anyone associated with her used the AGO funds resulting from purportedly false invoices for personal use.

Benson moves under Federal Rule of Criminal Procedure 12(b)(3)(B)(v) to dismiss counts 1–3 of the Indictment. Dkt. 37 at 1. The Court denies her motion for the reasons stated below.

//
//
//

## II. LEGAL STANDARD

**A.    Benson's Motion to Dismiss.**

A defendant may move to dismiss a charge on the ground that the indictment "fail[s] to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). In considering a motion to dismiss, the Court must accept the allegations in the indictment as true, and "analyz[e] whether a cognizable offense has been charged." *United States v. Boren,* 278 F.3d 911, 914 (9th Cir. 2002) (citations omitted). The Court is "bound by the four corners of the indictment" in its analysis. *Id*.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). It is "sufficient if it contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982). A motion to dismiss a charge in the indictment can be determined before trial "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir.), *cert. denied*, 478 U.S. 1007 (1986).

**B.    The Government sufficiently alleges that Benson defrauded the Washington State Attorney General's Office in counts 1–3.**

Benson argues that the Court should dismiss counts 1–3 because the "goal of Ms. Benson's alleged deception was not bribes or kickbacks, either for herself or others, as required for a federal fraud crime." Dkt 37 at 3. Instead, Benson argues that her "goal was simply to 'receive[] approximately $257,431.62 in net salary [and] other benefits

such as health insurance' that were her part of her employment compensation." *Id*. (quoting Dkt. 1, ¶ 5). She argues that the Government concedes that she wrote the invoices to the AGO to create the appearance that she was doing her job and asserts that "[e]arning your salary, even for a job poorly done or not done at all, does not make you a federal criminal." *Id*. In short, she argues that, because "counts 1-3 do not allege a money or property benefit other than Ms. Benson's employment compensation, those counts fail to allege a cognizable federal offense." Dkt. 45 at 1.

The Government counters that Benson cannot dismiss a charge in an indictment by disputing the Government's "theory of the case," and that even if she could, her characterization of its theory is incorrect. Dkt. 41 at 3. It asserts that the indictment is sufficient because it "contains the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable [her] to plead double jeopardy." Dkt. 41 at 2 (quoting *United States v. Buckley*, 689 F.2d 893, 896 (9th Cir. 1982)). Although it need not "even allege its theory of the case in the Indictment to withstand a motion to dismiss," it clarifies that the charges against Benson "are not based on the salary and benefits that she obtained from the Washington Coalition of Crime Victim Advocates (WCCVA), her employer." Dkt. 41 at 3–4. They are based on the grant funds that WCCVA obtained from the Attorney General's Office (AGO) through Benson submitting fraudulent invoices for reimbursement. Because counts 1–3 "focus on the fraudulent invoices that Benson submitted to the AGO for reimbursement 'for work that was never performed or for items that were never ordered or received,'" Benson's ultimate motivation to receive her own salary only bears on her motive for submitting

fraudulent invoices and does not warrant dismissing counts 1–3. Dkt. 41 at 4–5 (quoting Dkt. 1, ¶ 6).

Both parties concede, as they must, that the Supreme Court and Ninth Circuit have rejected the "salary-maintenance" theory of fraud in different contexts. In general terms, a salary-maintenance theory alleges that the object of a defendant's fraud was to continue to receive the defendant's regular salary. The Supreme Court rejected this theory in *Skilling v. United States*, 561 U.S. 358 (2010), in the context of "honest-services" fraud, which prohibits "a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346; *see Skilling*, 561 U.S. at 413. The defendant in that case, a former Enron executive, was charged with conspiracy to commit honest-services fraud for his scheme "to defraud Enron's shareholders by misrepresenting the company's fiscal health, thereby artificially inflating its stock price." *Id.* at 413. "It was the Government's theory at trial that Skilling profited from the fraudulent scheme through the receipt of salary and bonuses and through the sale of approximately $200 million in Enron stock, which netted him $89 million" in the form of salary and bonuses. *Id.* Skilling argued the honest-services statute was unconstitutionally vague. *Id.* at 376. The Court adopted a limiting construction of the statute, holding that § 1346 criminalizes schemes involving only bribes and kickbacks. *Id.* at 403–09. Because the Government lacked evidence that Skilling solicited or received bribes in connection to his misrepresentations, the Court concluded that he did not commit honest-services fraud. *Id.* at 413.

The Ninth Circuit similarly rejected the salary-maintenance theory in *United States v. Yates*, 16 F.4th 256 (9th Cir. 2021). Yates, a bank executive, and his co-

defendant Heine, were accused of "misrepresent[ing] the condition of the bank … to receive their salaries and other financial compensation." *Id.* at 266. More specifically, the Government alleged that the defendants conspired "to conceal the true financial condition of the Bank and to create a better financial picture of the Bank [for] the Board of Directors, shareholders (current and prospective), regulators and the public" by "report[ing] false and misleading information about the performance of loans, conceal[ing] information about the status of foreclosed properties, ma[king] unauthorized transfers of Bank proceeds, and fail[ing] to disclose material facts about loans to Bank insiders to the Board of Directors, shareholders and regulators." *Id*. at 263. The Government technically charged the defendants with conspiring to commit property fraud, not honest-services fraud. *Id*. at 267. The Ninth Circuit found this distinction unconvincing: "Permitting the government to recharacterize schemes to defraud an employer of one's honest services—thereby profiting 'through the receipt of salary and bonuses,' *Skilling*, 561 U.S. at 413, 130 S .Ct. 2896—as schemes to deprive the employer of a property interest in the employee's continued receipt of a salary would work an impermissible 'end-run' around the Court's holding in *Skilling*." *Id*. (citations omitted). The court held that absent a bribe or kickback, a bank employee's scheme whose object is to deceive the bank while continuing to draw an existing salary cannot support a bank fraud conviction. *Id*. at 265.

      The facts alleged in Benson's case command a different result than that reached in *Skilling* or *Yates*. Counts 1–3 charge her with Wire Fraud in violation of 18. U.S.C. §

1343. Dkt. 1 at 7.[1] That statute prohibits "any scheme or artifice to defraud" or for obtaining money "by means of false or fraudulent pretenses, representations, or promises" with use of a wire. 18. U.S.C. § 1343. Under *Skilling* and *Yates*, the issue boils down to discerning the "object" of Benson's fraud. Accepting the truth of the allegations as it must when adjudicating a motion to dismiss an indictment, the Court concludes that the counts 1–3 of the indictment sufficiently state an offense by alleging that, when Benson submitted false invoices to the AGO, her object was to receive AGO funds on behalf of WCCVA. The Government alleges that Benson's invoices prompted the AGO to turn over approximately $199,000 to WCCVA. Dkt. 1 at 6–7. It is not dispositive that Benson's motive for obtaining the AGO funds was to "give the appearance that [she] was actively performing her job as the WCCVA Executive Director…." Dkt. 1, ¶ 5. The fact that Benson did not pocket those funds but rather obtained them to keep her job does not preclude the Government from prosecuting her fraud against the AGO. Her argument to the contrary conflates the "object of the fraud" with her motive for committing fraud.

If Benson had merely earned her salary while failing to perform her job without fraudulently obtaining funds from another entity, then she would be similarly situated to the defendants in *Yates* and *Skilling*. But unlike those defendants, it is not her employer's money that is at issue here. It is the State's money. Benson is correct that she, like the defendants in *Skilling* and *Yates*, profited from the alleged fraud only through the receipt

---

[1] For reference, the defendants in *Yates* were "charged with one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, and 18 counts of making a false bank entry, in violation of 18 U.S.C. § 1005." *Yates*, 16 F.4th at 263. In *Skilling*, the defendant was charged with honest services fraud under 18 U.S.C. §§ 371, 1343, 1346. *Skilling*, 130 S. Ct. at 2900.

of her salary and job benefits. Dkt. 37 at 5. But that fact alone is insufficient to render her case an honest-services fraud. How a defendant profits from a fraudulent scheme can be indicative of the "object of the fraud," but it is not determinative. Unlike the defendants in *Yates*, Benson did not merely "conceal[] the truth that she was not performing her job" from her employer. Dkt. 37 at 5. She obtained money for her employer from a separate entity under allegedly false pretenses. The allegations in counts 1–3 are not "effectively an honest-services case dressed in the garb of salary deprivation" but rather her alleged fraudulent solicitation of State funds for WCCVA seeking reimbursement of costs that were allegedly never incurred. *Yates*, 16 F.4th at 268. In sum, Benson's motive does not preclude the Government for prosecuting her for fraudulently obtaining AGO funds, even if the funds went into WCCVA's account. The facts as alleged in counts 1–3 adequately inform Benson of the charge against her and allege a cognizable offense.

C.     **Benson's Motion to Produce Grand Jury Instructions.**

Benson moves to produce the grand jury instructions for counts 1–3. Dkt. 49. She seeks these instructions as evidence to support the very argument advanced in her motion to dismiss these counts:

> Ms. Benson has filed a Motion to Dismiss these counts because they allege a scheme to defraud that is not covered by the statute, as established by case law, including *Skilling v. United States*, 561 U.S. 358 (2010)), and *United States v. Yates*, 16 F.4th 256, 267 (9th Cir. 2021). Dkt. 37. . . . .
> . . . Ms. Benson believes that the allegations in the indictment establish a serious risk that the government instructed the grand jury incorrectly regarding the law governing th[e wire fraud] statute. If so, that would be an additional basis to dismiss counts 1-3. Accordingly, she asked the government to provide a copy of the instructions given to the grand jury pertaining to elements of the wire fraud statute.

Dkt. 49 at 2.

The Government opposes her motion. Dkt. 58. It asserts that the "claim that the government may have misadvised the grand jury about the wire fraud charges is premised on her flawed reading of the indictment" and again clarifies that the "object of her fraud scheme was state grant money, not her salary and benefits as she claims." *Id*. at 2.

Because counts 1–3 allege a cognizable offense, there is no need to compel production of the grand jury instructions. Accordingly, Benson's motion to compel, Dkt. 49, is **DENIED.**

### III.  ORDER

It is hereby **ORDERED** that Benson's Motion to Dismiss, Sever Counts, and Compel Discovery, Dkt. 37, is **DENIED in part**. It is denied insofar as Benson moves to dismiss counts 1–3. The Court **RESERVES RULING** on the motion insofar as Benson seeks to dismiss count 4, sever counts 1–3 from count 4, and compel discovery. The Motion to Produce Grand Jury Instructions, Dkt. 49, is **DENIED**.

Dated this 12th day of December, 2023.

BENJAMIN H. SETTLE
United States District Judge