The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 21-5222 BHS |
| Plaintiff | UNITED STATES' TRIAL BRIEF |
| v. | |
| CODY BENSON, | |
| Defendant. | |

## I. INTRODUCTION

In July 2021, the grand jury returned an Indictment against the defendant Cody Benson. Dkt. 1. The Indictment charges Benson with four counts of wire fraud. Counts One to Three stem from Benson's tenure as Executive Director of the Washington Coalition of Crime Victim Advocates (WCCVA), a nonprofit organization created to provide training and support services to crime-victim advocates in Washington. WCCVA was funded by a grant administered by the Washington State Attorney General's Office. Benson submitted false invoices to the Attorney General's Office, obtaining reimbursements for expenses that she and the organization did not incur. Count Four stems from Benson's application for unemployment benefits after the Attorney General's

United States' Trial Brief - 1
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Office paused WCCVA's grant funding and Benson lost her job. To secure her unemployment benefits, Benson lied about where she lived.

Benson moved to sever Count Four from Counts One to Three, which the Court granted. Dkt. 66. Benson's trial on Counts One to Three is set to start on January 3, 2024. The trial date for Count Four is to be determined. The United States presents this Trial Brief for the trial on Counts One to Three.

Assistant United States Attorneys Philip Kopczynski and Yunah Chung will represent the United States. The primary case agent at trial will be FBI Special Agent Micheal Moore. Federal Public Defender Colin Fieman and Assistant Federal Public Defender Mukund Rathi will represent Benson.

Benson has been released on bond. There are no pending motions in the case.[1] The United States expects to call approximately 16 witnesses during its case-in-chief. The United States anticipates that it will present its case-in-chief in approximately three days, assuming reasonable cross-examination by the defense. The parties are discussing stipulations regarding foundational matters to streamline the presentation of evidence.

## II.   BACKGROUND

### A.   Facts

Founded in 1989, the Washington Coalition for Crime Victim Advocates (WCCVA) was a nonprofit organization based in Olympia, Washington, that provided training, certification, and technical assistance for crime-victim advocates. Starting in or around 2013, WCCVA was funded by a grant that the Washington State Legislature appropriated specifically to it. In July 2013, the Washington State Attorney General's Office became the grant's administrator. Under a contract with WCCVA, the Attorney's

---

[1] On December 14, 2023, in regard to a pending motion to compel discovery, the Court ordered the government to confirm with the Attorney General's Office that it does not possess—and cannot obtain from any other sources—certain categories of documents beyond what it had already turned over. Dkt. 66. The government received this confirmation the following day, and it conveyed this message to the defense via email. The defense acknowledged the government's message and did not raise any new concerns. The government therefore believes this discovery motion is now resolved.

United States' Trial Brief - 2
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

General's Office was tasked with disbursing grant funds to WCCVA upon receiving monthly vouchers with documentation of its expenses. WCCVA's entire operating budget—everything from salaries to rent to office supplies—was paid for by these state grant funds.

Benson became WCCVA's Executive Director in 2013. She was responsible for overseeing WCCVA's day-to-day operations, which included planning for and providing training to crime-victim advocates. She also oversaw WCCVA's annual budget, and submitted invoices and receipts to the Attorney General's Office for reimbursement.

Evidence will show that Benson created the impression that WCCVA was functioning as normal when, in reality, its activities were slowing to a halt. Benson was largely absent from her job in part because she was living overseas, a fact that she hid from the Attorney General's Office. Benson kept incomplete records, or no records at all, of WCCVA activities, failed to keep current WCCVA's corporate filings, and failed to procure third-party audits of WCCVA's accounting as was required under WCCVA's contract with the Attorney General's Office. She also put family members such as her son and her sister on WCCVA's payroll. In the final years before WCCVA collapsed, Benson and her son were its only employees.

Under Benson's leadership, WCCVA provided little training to crime-victim advocates. To secure continued grant funding from the state while doing minimal work, Benson submitted at least six invoices for work that WCCVA never performed or items that it never paid for or ordered. Benson also submitted expense vouchers to the Attorney General's Office seeking reimbursement for travel expenses that she had not actually incurred.

### 1. June 2015 invoice for trainings

In July 2015, Benson obtained an invoice dated June 29, 2015 from an outside provider of trainings on crime victims' rights. The invoice listed the costs of two trainings for victim advocates totaling $39,600. Benson submitted this invoice to the

United States' Trial Brief - 3
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Attorney General's Office and obtained reimbursement for the trainings. But after exchanging emails with the trainer for over a year, during which the trainer repeatedly asked Benson to commit to training dates, no training was scheduled and therefore no payment was ever made to the trainer.

### 2. June 2016 invoices for RFID blocker sleeves

On June 30, 2016, Benson placed orders for RFID blockers sleeves and office supplies with a company that specialized in promotional products. On July 6, 2016, a company representative emailed her an invoice dated July 6, 2016 that billed WCCVA $33,837.88 for RFID blocker sleeves. On July 7, 2016, a company representative emailed her a second invoice dated July 7, 2016 that billed WCCVA $25,548.08 for miscellaneous office supplies. Benson requested that the company revise the dates on the invoices to June 30, 2016, because the invoices needed to be dated before the end of June, when WCCVA's grant year ends. She eventually received revised invoices with revised dates, although on the invoice for the miscellaneous office supplies, the date on the first page had been changed to June 30, 2016 but the second and third pages were still dated July 7, 2016.

Benson instructed WCCVA's bookkeeper to include those invoices in WCCVA's June 2016 voucher packet, saying that they were for "purchases made in June." Benson then sent the voucher packet to the Attorney General's Office for reimbursement. On August 9, 2016, the Attorney General's Office paid WCCVA $59,375.96 for those expenses. But Benson never actually paid for these orders. After making multiple attempts to contact Benson and receiving no response, the company ultimately canceled the orders.

### 3. June 2016 bill for flash drives

In an email exchange in late June 2016 between Benson and a company that sells flash drives, Benson expressed an interest in placing a bulk order for flash drives. When the company's representative sent her a document titled, "Quote," containing an itemized

United States' Trial Brief - 4
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

list of the products that Benson stated she would order, Benson asked for an "actual invoice." Benson specified that this document should not look like a "Quote" because she would not get reimbursed from the state-funded grant once the grant period closed at the end of the month. The representative responded that invoices are generated after an order is actually placed, but ultimately emailed Benson a "Bill" for $4,418.00 with a due date of June 30, 2016 that included the notation, "Advance Payment." After providing this document to Benson, the representative sent Benson five follow-up emails to inquire about whether Benson would order the flash drives. Benson did not respond.

This "Bill" was included in WCCVA's June 2016 voucher packet, which Benson sent to the Attorney General's Office for reimbursement. On August 9, 2016, the Attorney General's Office paid WCCVA $4,418.00 for those expenses, even though the order was never placed.

### 4. June 2017 invoices for training

In July 2017, Benson obtained two invoices for training services totaling $66,400 from a national organization that provides training for victim advocates. As she had before with others, she asked this organization to back-date the invoices to June 2017. She then included these invoices in WCCVA's June 2017 voucher packet, which Benson sent to the Attorney General's Office for reimbursement. Based on the invoices that Benson submitted, the Attorney General's Office disbursed $50,136.24, which was what remained in WCCVA's budget for that fiscal year. But the training did not occur because Benson never paid for it. Getting no response from Benson about the outstanding payment, the organization that issued the invoices ultimately voided them for non-payment.

The following year, after the Attorney General's Office began investigating Benson's fraud and deceit, she returned this $50,136.24 to the state. In doing so, she falsely claimed that WCCVA had tried to pay for these trainings but the organization never cashed WCCVA's check.

United States' Trial Brief - 5
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**5.     June 2017 expense voucher for mileage**

In July 2017, Benson submitted an expense voucher to the Attorney General's Office, seeking payment of $1,348.20 for mileage that she claimed to have incurred while on work trips. The voucher included purported travel to Aberdeen, Seattle, Chehalis, Ellensburg, Bellingham, Vancouver, and Spokane, Washington, on various dates between May 4, 2017 and June 27, 2017. Benson's travel records confirm, however, that she was in Italy during this time.

**B.     Procedure**

Benson was charged in the Indictment on July 7, 2021. Dkt. 1. She appeared in this District on July 19, 2021, and was released on an appearance bond. Dkts. 8, 9. The Court appointed the Federal Public Defender for Benson's defense. Dkt. 6. She has remained on bond.

### III.     ANTICIPATED LEGAL AND EVIDENTIARY ISSUES

**A.     The Law of Wire Fraud – Existence of the Fraudulent Scheme**

Benson will stand trial on three counts of wire fraud. The elements of wire fraud are: (1) the defendant devised or intended to devise a scheme to defraud, (2) the statements made as part of the scheme were material, (3) the defendant acted with the intent to defraud, and (4) the defendant used, or caused to be used, an interstate or foreign wire communication to carry out or attempt to carry out an essential part of the scheme. 9th Cir. Model Jury Instr. No. 15.35.

To prove the first element of wire fraud—the existence of the fraudulent scheme—the United States will present evidence of both charged and uncharged conduct. The commission of wire fraud "necessarily includes a fraudulent scheme as a whole, including additional executions of the scheme that were not specifically charged." *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016) (citation and ellipses omitted) (noting that uncharged transactions "are part of the charged offense—the fraudulent scheme as a whole—not 'other' crimes or 'other' acts evidence" under Rule 404(b)).

United States' Trial Brief - 6
*United States v. Benson* / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Here, the Indictment alleges that Benson "submitted at least six false invoices to the Attorney General's Office." Dkt. 1 at ¶ 6. While the Indictment specifically identifies wire transmissions related to three of those false invoices as executions of the scheme to defraud, *id.* at ¶ 18, the government will present evidence of all the false invoices at trial. Additionally, the Indictment alleges that it was part of the scheme for Benson "to give the appearance that [she] was actively performing her job as the WCCVA Executive Director, and that . . . WCCVA was providing training and support services to crime victim advocates in Washington State, when, in reality, under [her] leadership, . . . WCCVA provided very little training or other support services to crime victim advocates." *Id.* at ¶ 5. To prove this and similar allegations, the United States will present evidence of Benson repeatedly misleading people about the fact that she had moved to Italy, and of her failure to perform her job as WCCVA's Executive Director by, among other things, failing to keep complete records of WCCVA activities, to keep current WCCVA's corporate filings, to timely pay its taxes, and to procure third-party audits of WCCVA's accounting.

Instances of Benson's failure to perform her job duties are admissible on the additional grounds that it is inextricably intertwined with the charged offense. *See United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012) ("Evidence should not be considered 'other crimes' or 'other act' evidence . . . if 'the evidence concerning the "other" act and the evidence concerning the crime charged are inextricably intertwined.'") (quoting *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987)). Evidence will be admitted under this doctrine where it is "part of the transaction that serves as the basis for the criminal charge," or where it is "necessary to do so to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Loftis*, 843 F.3d at 1178 (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995)); *United States v. Rizk*, 660 F.3d 1125, 1132 (9th Cir. 2011). By executing her false-invoice scheme, Benson sought to maintain the appearance that WCCVA was

United States' Trial Brief - 7
*United States v. Benson* / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

functioning normally when, in fact, it did very little work. Evidence of Benson's nearly complete failure to do her job, therefore, is necessary for the government to present a coherent and comprehensible explanation of Benson's commission of the crime.

**B.     Reference to the Penalties that Benson Faces**

If convicted at trial, Benson faces the potential of a prison sentence. "It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992); *see also Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"); *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (trial judge properly instructed jury that the "punishment provided by law for the offenses charged in the indictment are matters exclusively within the province of the court," and "[i]t should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused"). Information about penalties draws the attention of the jury away from its chief function as the trier-of-fact, opens the door to compromise verdicts, and confuses the issues to be decided. *United States v. Olano*, 62 F.3d 1180, 1202 (9th Cir. 1995). Accordingly, it would be improper for the defense to make any reference to Benson's potential punishment in the presence of the jury at any point in the proceedings.

**C.     Statements of the Defendant**

The United States intends to introduce evidence regarding statements made by Benson, including, among other things, statements that she made to the Attorney General's Office, WCCVA staff, and vendor organizations and businesses. A defendant's own statements are admissible, non-hearsay admissions of a party-opponent when offered into evidence by the United States. *See* Fed. R. Evid. 801(d)(2)(A).

The United States may offer all, some, or none of a defendant's statements at trial under Rule 801(d)(2). A defendant, however, cannot use this rule to offer her own prior

United States' Trial Brief - 8
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

out-of-court statements. Rule 801(d)(2) is unavailable to a defendant, since she would be the proponent of the evidence and, where she seeks to introduce it, it is not offered against her. *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988). As a result, the hearsay rule bars a defendant from introducing her own prior statements. *United States v. Mitchell*, 502 F.3d 931, 964–65 (9th Cir. 2007).

If Benson wishes to tell her side of the story to the jury, she must take the stand and testify under oath and be subject to cross-examination. Indeed, even where the United States elicits the inculpatory portion of a defendant's oral statement from a witness, the defendant is not entitled to elicit any exculpatory portion on cross-examination. *Ortega*, 203 F.3d at 682. The rule of completeness (Fed. R. Evid. 106) has no place in this analysis because it applies only to written or recorded statements. *Id*. And for any written or recorded statements of Benson, such as those she made to the Attorney General's Office, the United States will offer evidence that easily passes muster under Rule 106.

D.   **Statements Offered for a Non-Hearsay Purpose**

A statement is hearsay if it is (1) an assertion that (2) is made out of court and (3) is offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801(c). Many out-of-court statements are not hearsay because they either are not assertions, or they are not offered to prove the truth of the matter asserted. *United States v. Oguns*, 921 F.2d 442, 449 (2nd Cir. 1990) (questions are not assertions and are thus not hearsay). Furthermore, many statements that meet the definition of hearsay are admissible under one or more of the many exceptions to the hearsay rule.

In this case, the United States may offer out-of-court statements, not to prove the truth of the matters asserted, but merely to give context to the defendant's statements. Therefore, the statements would not constitute hearsay within the definition of Rule 801. *United States v. Catano*, 65 F.3d 219, 225 (1st Cir. 1995) (informant's part of

United States' Trial Brief - 9
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conversation with agent was not hearsay because it was offered for context and not to prove the truth of informant's statements). For example, the United States will offer evidence of questions that Attorney General's Office staff posed to Benson during their communications with her, and concerns that they expressed, before and after the Office uncovered Benson's alleged fraud, which give context to her statements made in response.

**E.   Business Records**

The government intends to offer into evidence business records from various sources, including from WCCVA's bank and businesses from which WCCVA made purchases, among other sources. The business-records exception to the hearsay rule allows a record to be admitted if it is made at or near the time of the events set forth therein, by a person with knowledge, and is kept in the course of regularly conducted business activity, and if it is the regular practice of the business to make the record. Fed. R. Evid. 803(6). Any person familiar with the record-keeping practices of the business who can identify the record at issue as having been made in the ordinary course of business is a sufficient foundational witness. Personal knowledge of the document is not required and does not affect its admissibility. *United States v. Pitman*, 475 F.2d 1335, 1337 (9th Cir. 1973); *see United States v. Childs*, 5 F.3d 1328, 1334 (9th Cir. 1993) (the phrase "other qualified witness" is broadly interpreted to require "only that the witness understand the record-keeping system" at the particular business).

A record generated by a third party and received and relied upon in the ordinary course, such as an invoice, becomes a business record of the company relying upon it. *Childs*, 5 F.3d at 1333–34. Incompleteness, ambiguities, and inaccuracies in business records go to the weight to be given the evidence, not to its admissibility. *See United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988).

The government has produced to Benson copies of business records, as well as custodian certifications under Rule 902(11), during discovery. The defense has not

United States' Trial Brief - 10
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

objected to date, and the government does not anticipate the defense having a valid basis to object to the admission of these records. The parties are discussing foundational stipulations, as noted above, and the stipulations under discussion would address the admissibility of business records under Rules 902(11) and 803(6).

### F. Summary Charts

The investigation and prosecution of this case has involved extensive review of voluminous invoices, receipts, bank records, accounting records, and other documents. The government may present some of this evidence through the case agent in the form of summary testimony and charts. The government has provided the defense with all the underlying materials and will provide drafts the summary charts, if any, in advance of trial.

Federal Rule of Evidence 1006 states that "[t]he proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot conveniently be examined in court." A party offering a summary under Rule 1006 must establish that the underlying materials cannot be conveniently examined in court, and that they are admissible at trial, as conditions precedent to introduction of the summary into evidence. *Amarelu v. Connell*, 102 F.3d 1494, 1516 (9th Cir. 1997). The proponent of a summary also must establish that the underlying documents were made available to the opposing party for inspection. *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984). Summaries must fairly represent the underlying documents, and their admission into evidence is left to the trial court's discretion. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1516 (9th Cir. 1985), *superseded on other grounds by Northrup Corp. v. Triad Intern. Mktg.*, 842 F.2d 1154 (9th Cir. 1988).

All these requirements are met in this case. If the government were to publish all the relevant bank records, accounting records, and other documents, the jury would be faced with reviewing thousands of pages of material. The government has long since

United States' Trial Brief - 11
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

provided the defense with copies of all the underlying records. And the summary testimony and any charts presented at trial will be accurate and non-prejudicial.

Rule 1006 does not require that it literally be impossible for the fact finder to examine the underlying records before a summary may be admitted. *United States v. Stephens*, 779 F.2d 232, 238–39 (5th Cir. 1985); *United States v. Scales*, 594 F.2d 558, 562 (6th Cir. 1979). Rather, Rule 1006 contemplates that summaries of voluminous records may be used without introducing each and every underlying document into evidence. *Scales*, 594 F.2d at 562. Furthermore, the fact that some of the underlying documents may be admitted in evidence does not mean that they can be "conveniently examined in court." *Stephens*, 779 F.2d at 239; *United States v. Lemire*, 720 F.2d 1327, 1347 (D.C. Cir. 1983).

The Ninth Circuit has affirmed the admission as substantive evidence of a wide variety of summary charts pursuant to Rule 1006 where (as in this case) such charts are based on the sponsoring witnesses' out-of-court review of voluminous evidence. *See, e.g.*, *United States v. Shirley*, 884 F.2d 1130, 1133 (9th Cir. 1989) (chart summarizing information about telephone calls made to and from phones associated with defendants, relying on review of phone records, rental records, jail records, and other information); *United States v. Meyers*, 847 F.2d 1408, 1412 (9th Cir. 1988) (chart summarizing phone records and law enforcement surveillance reports); *Catabran*, 836 F.2d at 456–58 (charts summarizing voluminous computer printouts and inventory records in bankruptcy fraud prosecution); *United States v. Gardner*, 611 F.2d 770, 776 (9th Cir. 1980) (chart summarizing assets, liabilities, and expenditures of defendant in tax prosecution).

**G.  Exclusion of Witnesses**

Under Federal Rule of Evidence 615, the government respectfully requests that witnesses be excluded from the courtroom, with the exception of Special Agent Moore, who is the case agent and who should be permitted to sit at counsel table, and Special Agent Schroff, who is the former case agent and should be permitted to observe the

United States' Trial Brief - 12
*United States v. Benson* / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

proceedings from the gallery. *United States v. Thomas*, 835 F.2d 219, 222–23 (9th Cir. 1987); *see also United States v. Machor*, 879 F.2d 945, 953–54 (1st Cir. 1989).

## IV.   FORFEITURE

The United States seeks to forfeit all proceeds that Benson obtained from her wire-fraud scheme. As required by Federal Rule of Criminal Procedure 32.2(a), the United States provided notice to Benson of this intent in the Indictment. Dkt. 1. All proceeds of Benson's wire-fraud scheme are forfeitable under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) if they are derived from or traceable to the scheme. The United States expects the evidence at trial will establish that Benson obtained proceeds totaling approximately $199,978 from her false invoices and approximately $257,431.62 in net salary and other benefits such as health insurance, retirement plan contributions, and health reimbursement account contributions during the fraudulent scheme.

### A.   Legal Standard for Forfeiture

Criminal forfeiture is a form of punishment that is imposed as part of a criminal sentence. *Libretti v. United States*, 516 U.S. 29, 39–40 (1995). For the government to criminally forfeit property, there must be a predicate criminal conviction, a statute authorizing forfeiture for the crime of conviction, and evidence to support the statutorily required nexus between the property and the crime of conviction. *See, e.g.*, *United States v. Garcia-Guizar*, 160 F.3d 511, 518–20 (9th Cir. 1998) (reviewing these requirements). With respect to the required nexus, the government must establish the forfeitability of the relevant property by a preponderance of the evidence. *Id.* at 517–18; *see also United States v. Martin,* 662 F.3d 301, 307 (4th Cir. 2011); *United States v. Rutgard*, 116 F.3d 1270, 1293 (9th Cir. 1997); *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1576–77 (9th Cir. 1989).

In other words, depending on the relevant forfeiture statute, the government must present evidence that establishes the relevant property is, "more likely than not," forfeitable as proceeds of the crime, property that facilitated the crime, and/or property

United States' Trial Brief - 13
*United States v. Benson* / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

involved in the crime. This lower standard of proof "is constitutional because the criminal forfeiture provision does not itself describe a separate offense but is merely an 'additional penalty' for an offense that must be proved beyond a reasonable doubt." *Garcia-Guizar*, 160 F.3d at 518 (quoting *Hernandez-Escarsega*, 886 F.2d at 1577).

Here, there is statutory authority to forfeit all proceeds that Benson obtained from her wire-fraud scheme under 18 U.S.C. § 981(a)(1)(C), by way of 28 U.S.C. § 2461(c).[2] Indeed, forfeiture upon a conviction is mandatory. *See* 28 U.S.C. § 2461(c) (providing the court "shall order" forfeiture when sentencing a defendant on these charges).

Upon conviction of a scheme to defraud, or of a conspiracy to commit a scheme to defraud, proceeds are subject to forfeiture if they are derived from or traceable to the scheme. It is not necessary for the United States to trace the proceeds to a particular execution of the scheme, such as a particular wire or mailing in a charged count. *See United States v. Lo*, 839 F.3d 777, 793–94 (9th Cir. 2016) (citing *United States v. Capoccia*, 503 F.3d 103- 117-18 (2d Cir. 2007) ("[w]here the conviction itself is for executing a scheme, engaging in a conspiracy, or conducting a racketeering enterprise," the proceeds for purposes of forfeiture include the proceeds of "that scheme, conspiracy, or enterprise)); *United States v. Venturella*, 585 F.3d 1013, 1015, 1016–17 (7th Cir. 2009) (forfeiture in a fraud case "extends to the entire scheme"); *see also* 18 U.S.C. § 981(a)(1)(C) (providing forfeiture authority for specified unlawful activities, including mail fraud and wire fraud, and for conspiracy to commit same).

The United States seeks to forfeit these proceeds in the form of a "personal money judgment" entered against Benson. *See* Fed. R. Crim. P. 32.2(b)(1)(A); *United States v. Nejad*, 933 F.3d 1162 (9th Cir. 2019) (affirming a district court's authority to enter forfeiture money judgments and reciting circuit precedent). The government typically

---

[2] Under 28 U.S.C. § 2461(c), criminal forfeiture is authorized whenever civil forfeiture is available. And civil forfeiture is available for the proceeds of wire fraud. *See* 18 U.S.C. § 981(a)(1)(C).

United States' Trial Brief - 14
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

seeks a money judgment when the defendant has spent or otherwise disposed of the criminal proceeds, so they are no longer available to forfeit directly. *Nejad*, 933 F.3d at 1165 (recognizing the necessity of forfeiture money judgments in this circumstance and holding "a contrary rule . . . would allow an insolvent defendant to escape the mandatory forfeiture penalty Congress has imposed simply by spending or otherwise disposing of his criminal proceeds before sentencing").

**B.     Forfeiture Process**

The Federal Rules of Criminal Procedure set the procedures for determining the forfeitability of property in a criminal case. Forfeitures are decided after a guilty verdict is returned on a count that supports the forfeiture. Fed. R. Crim. P. 32.2(b)(1)(A). At that juncture, the specific question for the fact finder is "whether the government [has established the] requisite nexus between the property and the offense." *Id*. Although a defendant has a right for a jury to determine the forfeitability of most property, no such right exists for a forfeiture money judgment. In the case of a money judgment, it is the Court that determines the amount. *Id.* ("If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay."); *see also United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005) ("Rule 32.2 does not entitle the accused to a jury's decision on the amount of the forfeiture"); *United States v. Phillips*, 704 F.3d 754, 771 (9th Cir. 2012) ("Given that the only issue here was a monetary forfeiture, no jury determination was necessary.").

As forfeiture is determined post-conviction, and is considered part of sentencing, the rules of evidence do not strictly apply to forfeiture proceedings. The Court may consider any evidence that is "relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). This includes any evidence presented by the parties during trial on the substantive criminal offenses. *Id.* ("The court's determination may be based on evidence already in the record"); *United States v. Newman*, 659 F.3d 1235, 1244–45 (9th Cir. 2011) (same).

United States' Trial Brief - 15
*United States v. Benson* / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V.  CONCLUSION

This trial brief has been prepared to acquaint the Court with the legal and factual issues that may arise at trial. The government is not aware of other legal or evidentiary issues that are likely to arise during this trial and that require the Court's attention at this juncture. If other issues do arise, the government requests the opportunity to address them in a supplemental brief or briefs.

DATED this 20th day of December, 2023.

Respectfully submitted,

TESSA M. GORMAN
Acting United States Attorney

s/ Yunah Chung
PHILIP KOPCZYNSKI
YUNAH CHUNG
Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, WA 98101-1271
Telephone:   (206) 553-7970
Email: philip.kopczynski@usdoj.gov
           yunah.chung@usdoj.gov

United States' Trial Brief - 16
United States v. Benson / CR 21-5222 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970