UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CODY BENSON,

    Defendant.

CASE NO. CR21-5222 BHS

ORDER

This matter is before the Court on Defendant Cody Benson's motion for acquittal. Dkt. 128. The jury's convictions on Counts 1 and 3 rest on a valid legal theory and are supported by sufficient evidence. Her motion is denied.

## I.   BACKGROUND

On January 16, 2024, a jury found Benson guilty of wire fraud as charged in Counts 1 and 3 of the indictment for obtaining grant funds from the Washington Attorney General's Office (the AGO) by submitting false invoices for reimbursement. Dkt. 120. The jury acquitted her on Count 2, which alleged that she sought fraudulent reimbursement for travel expenses that she had not incurred while she was living in Italy.

Dkt. 1 at 7; Dkt. 120 at 2. Benson filed a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c)[1]. Dkt. 128. This order follows.

## II.  DISCUSSION

**A.     Convictions on Counts 1 and 3 rest on a legally valid theory.**

Benson argues that Counts 1 and 3 rest on a legally invalid "salary-maintenance theory" and consequently warrant acquittal or a new trial. Dkt. 128 at 2. The Court gave a detailed overview of the caselaw behind salary-maintenance theory in its order denying Benson's motion to dismiss the indictment, Dkt. 64. It incorporates that overview by reference, and offers only a brief summary of the relevant terms and rulings here. In general, a salary-maintenance theory alleges that an employee deceived their[2] employer and the object of the employee's fraud was to continue to receive their regular salary and job benefits. Essentially, it alleges that the employee deceived their employer "to avoid being fired." *United States v. Yates*, 16 F.4th 256, 266 (9th Cir. 2021). Both the Supreme Court and Ninth Circuit have ruled that if the object of a defendant's fraud was merely to maintain the defendant's regular salary and benefits, it is insufficient to sustain a fraud conviction for honest services fraud (18 U.S.C. § 1346) or bank fraud (18 U.S.C. § 1349). Instead, the Government must show that the scheme involved something more, such as

---

[1] At the close of the Government's case the Defense made a motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a). Tr. Day 5 at 123:17–126:5. The Court reserved ruling but recognized that in later review it must decide the motion based upon the evidence that was in the record at the time of the ruling. *Id*. at 126:7–11; Fed. R. Cr. P. 29(b). The court now denies that midtrial motion finding that there was sufficient evidence presented in the Government's case to be submitted to the jury. In considering the instant motion, the court considered the entire evidentiary record.

[2] The Court uses "their" here as a gender-neutral possessive in the singular.

bribes or kickbacks or that the scheme's object was to obtain a "new or higher salary." *Yates*, 16 F.4th 256, 266; *Skilling*, 561 U.S. at 404.

Benson asserts that the "scheme at trial involved overlapping objects: one valid—seeking grant funds in Counts 1 and 3—and one invalid—Ms. Benson's salary and benefits." Dkt. 128 at 2. She argues that because one object of the scheme was to maintain her salary and benefits, the convictions on Counts 1 and 3 are invalid under *Skilling* and *Yates*.

Benson acknowledges that she has already made nearly identical arguments on three prior occasions: when moved to dismiss the indictment before the trial commenced, when she moved to instruct the jury that a salary-maintenance theory could not be used to support a guilty verdict on her charges, and when she moved for a judgment of acquittal after the Government rested its case. The Court denied each motion based on its conclusions that salary was a motive but not an object of the scheme and because the Washington Coalition of Crime Victim Advocates (WCCVA), not the AGO, employed Benson. *See, e.g.*, Dkt. 64 at 7.

With the benefit of evidence at trial, the Court renews its conclusion that the object of Benson's fraud was the entirety of the AGO grant funds. The fact that that she was motivated to defraud the AGO to keep her salary does not render the receipt of her salary as the object of her fraud. The record makes plain that the grant funds paid not only her salary, but also allowed for her employer WCCVA's programming and existence. *See, e.g.*, Tr. Day 6 at 166:2–10 (Government acknowledging in closing argument that WCCVA accomplished some programming in 2015–2018). In addition to

benefitting from her fraud through the receipt of her salary, she also benefitted by ensuring the opportunity to put her family on the WCCVA payroll. Tr. Day 2 at 176:13–17 (Benson's son was on the payroll at WCCVA from "2017 through 2018"). Her scheme sought all WCCVA grant funds through solicitations for reimbursement for costs that were never incurred. Her fraud therefore does not fit the narrow confines of salary-maintenance theory.

Benson's scheme differs from *Skillings* and *Yates* not only in the object of her fraud, but in whom she defrauded. Unlike the defendants in *Skillings*, *Yates,* and *United States v. Simpson*,[3] Benson defrauded a third-party instead of her employer. Benson attempts to overcome this distinction by arguing that the AGO was the "functional equivalent of an employer." Dkt. 137 at 5. This is unavailing. The Ninth Circuit has a four-factor test when considering whether an employee-employer relationship exists. It considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470

---

[3] Benson relies on *United States v. Simpson*, No. 3:21-CR-00153, 2023 WL 6247268 (W.D. La. Sept. 25, 2023), to support her assertion that "[e]ven if the government 'only attempt[ed] to argue [Benson's] motive, it still must show the object of the fraud was to receive a *higher* salary in order to do so' without running afoul of *Yates*." Dkt. 128 at 3. *Simpson* provides only persuasive authority, and is inapposite here because it rests on different facts. The object of Benson's fraud was to obtain all of her employer's grant funds, which ensured not only her salary, but the existence of her employer and ability to put her family on its payroll. The Government here can argue she was motivated to keep her salary without running afoul of *Yates*.

(9th Cir. 1983), *overruled on other grounds by Garcia v. San Antonio Metro. Transit. Auth.*, 469 U.S. 528, 538 (1985).

The AGO's relationship with Benson does not satisfy this test. First, WCCVA, not the AGO, had the primary power to hire and fire its employees. Dkt. 124, Ex. A-223.9 at 7, ¶ 13. WCCVA could terminate Benson for cause upon a "majority vote" of WCCVA's "full Board of Directors" and with the "approval" the AGO. *Id*. Merely approving WCCVA firing decisions does not support that the AGO was her employer.

Second, the record at trial does not establish that the AGO micromanaged her work schedule or conditions of her employment. *See* Dkt. 124, Ex. A-223.6 (detailing WCCVA overview of location and work schedule and employee evaluations).

The third factor is a closer call, but it also weighs against considering the AGO as Benson's employer. WCCVA determined her salary and benefits. Dkt. 124, Ex. A-223.5, ¶¶ 7, 8. An increase in Benson's salary however was subject to AGO approval. *Id*. ¶ 7. WCCVA paid Benson her salary from its bank account throughout her employment. Dkt. 124, Exs. 98–101, 103, 122–131 (WCCVA bank account statements). AGO grant funds paid Benson's salary.

When the AGO suspected that WCCVA was misappropriating funds, it refused to pay WCCVA employee salaries, including Benson's. Tr. Day 2 at 142:23–143:5; Tr. Day 2 at 128:16–129:21. The Government asserts that WCCVA continued to pay Benson her salary even after the AGO quit dispersing grant funds. Dkt. 135 at 8. The citations to the record that the Government provides to support its assertion are unclear at best. Benson replied persuasively with record citations showing that the AGO stopped paying her

ORDER - 5

1    salary in May 2018 and that the Government conceded in closing that Benson
2    "continue[d] working for free" after the AGO stopped paying her salary. Tr. Day 2 at
3    128:16–129:21 (the AGO stopped WCCVA salaries in May 2018); Tr. Day 6 at 205:12
4    (closing argument).
5         Finally, what little employment records existed, including documentation of her
6    vacation and sick leave, were in WCCVA's possession. Tr. Day 3 at 129:21–130:23; Dkt.
7    124, Exs. 286, 287 (emails regarding sick and vacation leave). On balance these factors
8    demonstrate that the AGO was not the "functional equivalent" of Benson's employer.
9         Benson asserts that "*Skilling* and *Yates* do not rest on labor law, and no such
10   analysis is required here." Dkt. 137 at 4. The lack of labor law in *Skilling* and *Yates* is not
11   instructive. It was undisputed in both cases that each defendant was the employee of the
12   respective businesses at issue. Benson argues further that the "AGO's control of Ms.
13   Benson's salary through its monthly approval (or disapproval) of salary payments is
14   dispositive under *Skilling* and *Yates* because it establishes (along with the government's
15   own arguments at trial) that salary was an object of the alleged scheme." *Id*. This
16   argument fails. It overstates the record to assert that AGO "controlled" Benson's salary.
17   As is discussed above, the AGO had to approve any salary increase, but WCCVA
18   determined the amount and paid Benson her salary from its bank account after receiving
19   grant funds. Even if the AGO had exclusive control over her salary, this is insufficient to
20   establish that salary was the object of her fraud. Benson again conflates motive for
21   committing fraud with the object of the fraud itself. It is undisputed that she was
22   motivated to defraud the AGO at least in part to continue receiving her salary. But the

ORDER - 6

object of her fraud was the entirety of the AGO grant funds for WCCVA. All of those funds were necessary not only for her salary, but for the continued existence of WCCVA and to ensure it received the same amount of grant funds in the following year.

Benson's case does not sufficiently resemble the honest services fraud or salary-maintenance theories at play in in *Skillings* or *Yates*. To conclude otherwise would extend those cases beyond their holdings and change the scope of what constitutes honest services fraud and salary maintenance. Although Benson is welcome to appeal and seek changes in law that would extend *Skillings* and *Yates* to what she terms her "somewhat hybrid job situation" and scheme, this Court must apply the law as it currently stands. Dkt. 128 at 3. Her convictions on Counts 1 and 3 rest on a valid legal theory and remain undisturbed.

**B.    There is sufficient evidence that Benson committed fraud.**

Benson argues that the evidence at trial for fraud was insufficient on two grounds. First, she argues the Government failed to prove that she made the misrepresentation that WCCVA expenses were already incurred. Dkt. 128 at 7. She asserts that she "repeatedly told the AGO that she was requesting funds in advance for tentative purposes, not expenses incurred." *Id*. Second, she argues that there is insufficient evidence that her misrepresentations about her remote work were material. *Id*. at 8. She asserts that only "mere speculation, rather than reasonable inference, supports the government's case" that her misrepresentation about remote work caused the AGO to provide grant funds. *Id*. (quoting *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc)).

1  Benson made the same argument to the jury about future versus incurred expenses.
2  They rejected it. There is sufficient evidence in the record to support the jury's finding.
3  This includes emails in which Benson told the AGO that "[t]he payment was issued from
4  WCCVA, and AGO reimbursed the expense" for a training that never occurred. Dkt. 124,
5  Ex. 72. Evidence from at trial showed that WCCVA never paid for this training, and the
6  AGO therefore unknowingly reimbursed a fake expense. The instances during which
7  Benson was forthright about seeking money for future expenses do not negate the
8  instances during which she misrepresented that some expenses were already incurred.

9  The Court also rejects her second ground. Contrary to Benson's contention, the
10 Government need not prove that her misrepresentation about her location alone was
11 sufficiently material to cause the AGO to pay the grant. There is sufficient evidence of
12 Benson's falsehoods surrounding her work, including her location, to support the jury's
13 finding that her dishonesty caused the AGO to transfer grant funds to WCCVA. Benson
14 provides no authority for her contention that each misrepresentation alleged must be
15 material to support the verdict. Even if the Government faced that requirement, more than
16 "mere speculation" supports the jury's finding that Benson's misrepresentation that she
17 lived in Washington was material to the AGO's decision to transfer WCCVA grant funds.
18 On this record, a reasonable jury could find that the AGO would have paused or
19 questioned funding if it knew that the executive director of WCCVA was living abroad
20 for an extended period.

21
22

### III.  ORDER

Therefore, it is hereby **ORDERED** that Benson's motion for acquittal, Dkt. 128, is **DENIED**.

Dated this 7th day of June, 2024.

BENJAMIN H. SETTLE
United States District Judge